COASTLAND CORPORATION and Ocean Sands, Inc., North Carolina Corporations Organized and Existing under Laws of the State of North Carolina, Appellees,

v.

COUNTY OF CURRITUCK, Appellant.

COASTLAND CORPORATION and Ocean Sands, Inc., North Carolina Corporations Organized and Existing Under the Laws of the State of North Carolina, Appellants,

v.

COUNTY OF CURRITUCK, Appellee.

Nos. 83–1658, 83–1723.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 10, 1984.

Decided May 11, 1984.

Rehearing and Rehearing En Banc Denied Aug. 29, 1984.

Dewey W. Wells, Elizabeth City, N.C. (Leroy, Wells, Shaw, Hornthal & Riley, Elizabeth City, N.C., on brief) and Norman W. Shearin, Jr., Kitty Hawk, N.C. (Shearin & Archbell, Kitty Hawk, N.C., on brief), for appellants.

Howard E. Manning, Jr., Raleigh, N.C. (Manning, Fulton & Skinner, Raleigh, N.C., on brief) and Gerald F. White, Elizabeth City, N.C. (Williams Brumsey, III, White, Hall, Mullen, Brumsey & Small, Elizabeth City, N.C., on brief), for appellee.

Before HALL and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

ERVIN, Circuit Judge:

Coastland Corporation filed suit in district court seeking damages from Currituck County under 42 U.S.C. § 1983 and under the fifth and fourteenth amendments. Coastland's amended complaint alleges due process violations actionable under § 1983 that arose from the County's failure to enforce the liquidated damages clause of a water and sewer contract. The complaint also sets forth an inverse condemnation claim arising from the County's land use regulation. The district court granted Currituck's motion for summary judgment on the § 1983 claim but held that there were material questions of fact concerning the inverse condemnation claim.[1] Because we conclude that Coastland did not have a property right under the water and sewer contract, we affirm the dismissal of its § 1983 claim. Finding that Currituck's land use regulations did not constitute a taking, we reverse the district court's order dismissing Currituck's motion for summary judgment on the inverse condemnation claim.

## I.

In 1971 Coastland bought 600 acres of land on the narrow Currituck Outer Banks. At that time, land to the north was owned by two developers, Kabler and Riggs, and by the United States Department of Interior. A road controlled by the Department of Interior provided the only access from the north to Coastland's property. The only access road to the south crossed over private property owned by Earl F. Slick. Soon after Coastland drew up plans to develop its property, the Currituck Board of Commissioners (the Commissioners) declared a one-year moratorium on all development while it revised its land use plans to account for the increased development of the Outer Banks. These revisions resulted in a land use plan known as the Currituck Plan, which was distinctive in its emphasis on Planned Unit Developments (PUDs) and on central water and sewerage facilities. Coastland revised its subdivision plans to accord with these changes.

On March 14, 1973, the Commissioners held a meeting to determine whether to change Currituck's zoning ordinance to accommodate Coastland's Planned Unit Development. Various groups objected to Coastland's plats because the plans increased the number of families on the property and did not provide for public access through the subdivision. The meeting was adjourned with an agreement that the question of access deserved further discussion. At a Commissioners meeting the following week, a motion passed to approve Coastland's disputed plats if they included a public right of way.[2]

---

1. Pursuant to 28 U.S.C. § 1292(b), the district court certified its order denying Currituck's motion for summary judgment on the inverse condemnation claim, and we granted permission to appeal.

2. At about this time, the Department of Interior closed the access road to the north leaving the only access through Slick's property to the south. Coastland paid Slick $100,000 for a private access easement on April 6, 1973.

On May 8, 1973, one-half of Coastland's plats, those designated as Phase II, were approved. Those plats showed Ocean Trail, the main access road, as a private road. However, the approval of this portion of Ocean Trail as private was later characterized by the Currituck Commissioners as a mistake. In September of 1973, the Commissioners considered approval of Coastland's Phase III plats. The northern developers Kabler and Riggs requested that the plats be disapproved because they did not provide for public access over Ocean Trail.[3] The Commissioners did not approve the plats and instead asked the various developers to meet with one another to discuss the question of access.

On March 4, 1974, Coastland's Phase III plats were approved with Coastland dedicating for public use the relevant sections of Ocean Trail. At a subsequent meeting, the Commissioners corrected their earlier mistake and declared the portions of Ocean Trail on the Phase II plats to be a public road. Coastland did not object to this declaration. The Phase IV and V plats were then approved on May 6 with Ocean Trail dedicated as a public road. Coastland's president later stated in a sworn affidavit that county officials told Coastland before its Phase III plats were approved that "there would be no further plat approvals granted to Coastland unless access was provided to outer banks land to the north of [Coastland's land] over Ocean Trail, and unless Coastland negotiated with [Kabler and Riggs] reasonable terms for access along the Slick easement." (J.A. 146)

On March 22, 1973, Coastland presented Currituck with a water and sewer contract that Currituck approved on May 8. The Commissioners had earlier agreed that Coastland would finance the construction of water and sewerage facilities and that the County would maintain the facilities. The contract provided, *inter alia*, that once Coastland requested the County to begin construction, the County had to complete construction within six (6) months, weather permitting. The contract contained no liquidated damages provision.

On July 7, 1975, Currituck contracted with Hilco Company to construct the water and sewer system contemplated in the Currituck-Coastland agreement. The contract between Currituck and Hilco called for the system to be completed within 180 days after Currituck's order to proceed. A liquidated damage provision required Hilco to pay Currituck $100.00 for each day's delay. Currituck ordered Hilco to proceed on September 14, 1975, and Hilco finished 505 days late. This delay resulted in $50,500.00 liquidated damages. After paying Hilco $91,132.18 for the system, the County sought reimbursement from Coastland. Coastland responded by insisting that Currituck recover $44,200.00 from Hilco in liquidated damages. The County chose not to recover any liquidated damages. Coastland, only disputing a few small charges, thereafter paid Currituck $89,632.18. Coastland threatened to sue Currituck for not recovering the liquidated damages, but it never filed suit in state court.

## II.

Coastland claims that the County's decision not to recover liquidated damages and credit them to Coastland's account, a decision made without giving Coastland a hearing on the subject, violated under color of state law Coastland's fourteenth amendment right to due process. 42 U.S.C. § 1983 provides a civil remedy in federal court for deprivation of federal rights under color of state law. Coastland's § 1983 claim is based on the premise that it had a property interest in the liquidated damages due Currituck under the Hilco-Currituck contract. This premise is a mistaken one.

For one to have a property interest in something, he must "have a legitimate claim of title to it." Property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source

---

**3.** At a subsequent meeting, Kabler and Riggs requested that the Phase III plats not be approved until there was a right of way through the Phase II section.

such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ Coastland's own argument undercuts its assumption that it had a property interest in the liquidated damages due Currituck under the 1975 Hilco-Currituck contract. Coastland argues that it was not an intended beneficiary of the contract between Currituck and Hilco and, therefore, that it had no right to sue for breach of contract in state court. The test to determine who is a third party beneficiary in North Carolina is whether the two principal parties entered into the contract *"with the intention,* express or implied, of benefitting a third party." *Carolina Builders Corp. v. AAA Dry Wall, Inc.,* 43 N.C.App. 444, 449, 259 S.E.2d 364 (1979). *Accord Vogel v. Reed Supply Company,* 277 N.C. 119, 177 S.E.2d 273 (1970); *Snyder v. Freeman,* 300 N.C. 204, 266 S.E.2d 593 (1980). Nothing in the record indicates that Currituck and Hilco agreed to the liquidated damages provision to benefit Coastland. Indeed, Coastland failed to include such a provision in its own contract with Currituck, and it appears that Currituck sought the provision to protect its own interests. Because Coastland is not a third party beneficiary, it has no basis in state law to claim a property interest in the liquidated damages and, thus, has no basis for a § 1983 action.

■ Even if there were facts in the record under which Coastland could be considered a third party beneficiary, there would be no process due since a suit for breach of contract would have provided Coastland with an adequate remedy in state law. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). As the First Circuit has held, "[a] mere breach of contractual right is not a depriva-

tion of property without *constitutional* due process of law .... Otherwise, virtually every controversy involving an alleged breach of contract by a government ... would be a constitutional case." *Medina Jimenez v. Almodovar,* 650 F.2d 363, 370 (1st Cir.1981).

## III.

Coastland also argues that it has a right to compensation directly under the fifth and fourteenth amendment because Currituck required Coastland to dedicate Ocean Trail as a public road before it would approve Coastland's plats. Because we find that, as a matter of law, Currituck's land use regulation did not amount to a taking, we reverse the district court's order denying Currituck's motion for summary judgment on the inverse condemnation claim.[4]

Following the Supreme Court's analysis in *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 127, 98 S.Ct. 2646, 2660, 57 L.Ed.2d 631 (1978), we have said that:

A use restriction on real property may constitute a taking if not reasonably necessary to the effectuation of a substantial public purpose or if it has an unduly harsh impact upon the owner's use of the property.

*Ocean Acres, Ltd. v. Dare County Board of Health,* 707 F.2d 103, 105 (4th Cir.1983). Although federal courts have uniformly held that the condemnation of a private road for public use is a taking under the fifth amendment, *e.g., United States v. 201.19 Acres of Land,* 478 F.2d 1042 (9th Cir.1973); *United States v. 10.0 Acres of Land,* 533 F.2d 1092 (9th Cir.1976), in this case Currituck did not condemn a private road. Rather, it imposed a use restriction requiring that if Coastland's land were to be used for a subdivision, it must include a public access road. The question, then, is the same as that faced by this court in *Ocean Acres, Ltd.,* 707 F.2d at 105; that is,

---

**4.** Because we hold no taking occurred, we do not decide whether an inverse condemnation claim may be maintained against a government entity that does not have power of eminent domain.

whether the requirement was reasonably necessary to effect a substantial public purpose or whether it had an unduly harsh impact.

 It is common for subdivision regulations to require the developer to dedicate portions of its land for public streets as a condition precedent to approval of its plat. There is no unconstitutional taking where the land use plan was in effect before the plat was submitted for approval and where the developer was not obliged to dedicate his land as a public street except as a condition to the approval of the plat. *Ridgefield Land Co. v. Detroit*, 241 Mich. 468, 217 N.W. 58 (1928). *See also, Ayres v. City Council of Los Angeles*, 34 Cal.2d 31, 207 P.2d 1, 7–8 (1949).

Currituck's subdivision regulations were adopted July 12, 1971, and amended October 1, 1973. The regulations require, among other things, that:

> All streets must provide for the continuation or appropriate projection of principal streets in surrounding areas and provide reasonable means on (sic) ingress and egress for surrounding acreage tracts.

(J.A. 304). N.C.G.S. § 153A–331 authorizes this regulation. In Coastland's case, Ocean Trail had to be a public road in order to provide reasonable means of egress and ingress. Although this requirement undoubtedly lessens the property value of Ocean Trail, it is reasonably necessary to effectuate a substantial public purpose—allowing access to various parts of the county. Moreover, its impact on Coastland is not unduly harsh. The road is still available to its potential buyers. When the benefit to the public of open access is balanced against Coastland's expectation of increased profits, the balance does not weigh heavily enough in Coastland's favor to establish material issues of fact concerning a taking of property without just compensation.

## IV.

For the foregoing reasons, the district court's summary judgment in favor of Currituck on the § 1983 claim is affirmed, and its order denying Currituck's motion for summary judgment on the inverse condemnation claim is reversed.

AFFIRMED IN PART AND REVERSED IN PART.